IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RAYMOND L. HAWKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:07CV876 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Raymond L. Hawkins seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his claim for Disability Insurance Benefits. The Commissioner's denial decision became final on July 25, 2007, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on December 7, 1957, and was 41 years of age on his alleged onset date of disability. He has a high school education. Plaintiff has past relevant work experience as a welder at a utility company. Plaintiff alleges disability as of June 14, 1999 due to severe asthma, asbestosis, sleep apnea, attention deficit disorder, anxiety, cognitive disorder and claustrophobia.

## The Administrative Proceedings

Plaintiff filed an application for Disability Insurance Benefits on March 4, 2004, alleging disability as of June 14, 1999, due to severe asthma, asbestosis, sleep apnea, attention deficit disorder, anxiety, cognitive disorder and claustrophobia. His claim was denied initially and on reconsideration, and Plaintiff filed a request for a hearing. A hearing was held on October 12, 2006, and a decision denying benefits was issued on January 29, 2007. Plaintiff filed a request for review, and on July 25, 2007, the Appeals Council found no basis for review of the ALJ's decision. Plaintiff thereafter filed a request for judicial review.

The findings of the ALJ relevant to this review include the following:

1-2. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2005. He did not engage in substantial gainful activity from his alleged onset date of June 14, 1999 through his date last insured on December 31, 2005.

3-4. Plaintiff's asthma, asbestosis, attention deficit hyperactivity disorder, anxiety, mild cognitive disorder, sleep apnea and claustrophobia are "severe" impairments, but do not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1.

5-6. Plaintiff has the residual functional capacity to perform sedentary and light work involving unskilled simple, routine, repetitive tasks in a low stress

environment with no extremes of heat, no work in confined areas or around hazardous materials or respiratory irritants, and no climbing ladders and scaffolds. Plaintiff is, however, unable to perform any past relevant work.

7-9. Plaintiff was born on December 7, 1957 and being 41 years old on his alleged onset date of disability, is defined as a "younger individual." He has at least a high school education and is able to communicate in English. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is not disabled regardless of whether he has transferable skills.

10. Considering Plaintiff's age, education, work experience and residual functional capacity, there were, through the date last insured, jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

11. Plaintiff was not under a disability as defined by the Social Security Act at any time from June 14, 1999 through December 31, 2005.

The Scope of Review

The scope of judicial review by this Court of the Commissioner's decision denying benefits is limited. *Frady v. Harris*, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence.

*Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

Discussion

In making a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. § 404.1520 (2008). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. *Id.*

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on June 14, 1999, his alleged onset date of disability, and continued to meet them through December 31, 2005. At step one of the sequential evaluation, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of disability through his date last insured. Proceeding to step two, the ALJ found that Plaintiff suffers from asthma, asbestosis, attention deficit hyperactivity disorder, anxiety, mild cognitive disorder, sleep apnea and claustrophobia, impairments that are severe within the meaning of 20 C.F.R. § 404.1520(c). The ALJ proceeded with the sequential evaluation and found at step three that Plaintiff does not have an impairment, or combination of impairments, that meets or equals the ones listed in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. The ALJ concluded his evaluation at steps four and five, finding that Plaintiff has the residual functional capacity to perform sedentary and light work requiring unskilled simple, routine, repetitive tasks in a low stress environment with no extremes of heat, no work in confined areas or around hazardous materials or respiratory irritants, and no climbing ladders and scaffolds. He is, however, not capable of returning to his past relevant work. Based on Plaintiff's residual functional capacity and his age, education and work experience, and considering the testimony of a vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff can perform, and thus Plaintiff is "not disabled."

In this action for judicial review, Plaintiff first argues that the ALJ improperly failed to accord controlling weight to the opinion of Plaintiff's treating physician, Dr. Douglas Kelling. (Docket No. 9, Pl.'s Mem. in Supp. of Mot. for Summ. J., at 2.) The Commissioner has promulgated regulations governing the weight to be given the opinions of treating physicians. The regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) . . . If we find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence . . . we will give it controlling weight.

20 C.F.R. § 404.1527(d)(2) (2008). By negative implication, if a treating source's opinion is not supported by medically acceptable clinical and laboratory diagnostic techniques *or* if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Kelling completed a pulmonary residual functional capacity assessment on February 15, 2006, in which he stated that Plaintiff suffers several asthma attacks per weeks, each of which leaves Plaintiff incapacitated for several days. (Tr. at 416.) He further opined that Plaintiff's symptoms constantly interfere with his attention and concentration and that Plaintiff is incapable of even a low-stress job. (*Id.*) He also opined that Plaintiff can not walk a city block without rest, and is incapable of sitting or standing for more than five minutes at a time. (*Id.* 417-18.) He determined that due to problems with focus and frustration, Plaintiff cannot sit or stand in one place at all, that he could never lift any weight

at all, he must avoid all exposure to any kind of environmental irritants, and that he would likely miss more than four days of work per month. (*Id.* at 418-19.)

The ALJ found that this assessment is inconsistent with both Dr. Kelling's office records and Plaintiff's reported daily activities, and therefore gave it little weight. (Tr. at 23.) Plaintiff contends, however, that the ALJ's finding is not supported by substantial evidence because Dr. Kelling's assessment is consistent with a 2002 pulmonary exercise test which showed that Plaintiff had inadequate work capacity compatible with significant pulmonary impairment. (Docket No. 9 at 3.)

Based on the record as a whole, this Court finds that the ALJ's finding is supported by substantial evidence. Dr. Kelling's opinion is inconsistent with his own office notes and treatment records. Plaintiff was first seen by Dr. Kelling in November 1996, at which point Dr. Kelling found evidence of asbestosis and asbestosis related pleural disease. (*Id.* at 290.) However, Plaintiff thereafter continued to work as a welder, and did not return to Dr. Kelling until June 22, 1999, approximately 9 months after an industrial accident which exposed Plaintiff to smoke and fumes and which Plaintiff alleges caused his impairments. (*Id.*) At that time, Plaintiff reported recurrent asthma attacks precipitated by the fumes, dust and heat in his work environment. However, upon examination, Dr. Kelling noted that Plaintiff's respiratory effort and auscultation were normal with no crackles, rhonchi, wheezes or rubs. An x-ray taken the following week showed mild bilateral basilar scarring but no active disease and no evidence of congestive failure. (*Id.* at 304.) In response to

-7-

Case 1:07-cv-00876-TDS-PTS   Document 12   Filed 04/02/09   Page 7 of 17

Plaintiff's complaints, Dr. Kelling limited him to work where he had no exposure to dust, fumes, chemicals or heat, but otherwise placed no limitations on Plaintiff's ability to continue working. (*Id.* at 290.) Dr. Kelling thereafter continued to note normal respiratory examinations, and in September 1999, reported that Plaintiff's cardiopulmonary exercise test was consistent with deconditioning and that Plaintiff only got asthma when he was hot. (*Id.* at 291.) Plaintiff's respiratory examinations continued to be normal through April 2000, at which time Plaintiff reported no shortness of breath, cough or wheezing, and Dr. Kelling reported that a chest x-ray and CT scan showed no active disease. (*Id.* at 293.)

After his April 2000 visit, Plaintiff did not return to see Dr. Kelling for more than a year. When he next saw Dr. Kelling on July 10, 2001, Plaintiff complained of recurring asthma attacks, one of which was severe enough to require emergency room treatment. (*Id.*) However, Plaintiff also reported that his breathing had since been better, and Dr. Kelling again reported a normal respiratory examination. (*Id.*) A pulmonary function test showed only minimal obstructive lung defect and normal lung volumes and diffusion capacity. (*Id.* at 316.)

Plaintiff did not return to Dr. Kelling again until August 2002, at which time he reported that he had suffered no acute attacks of asthma since his prior visit more than a year earlier, and that his main complaint was shortness of breath while walking in the heat. (*Id.* at 294.) The following month, Plaintiff reported that his asthma was no worse after a decrease in his asthma medication dosage. (*Id.*) Dr. Kelling noted that a pulmonary exercise

test on September 13, 2002 showed inadequate work capacity with inadequate respiratory reserve compatible with significant pulmonary impairment. (*Id.*) However, the test also showed no desaturation on exertion, and a pulmonary function report completed the same day showed spirometry, lung volumes and diffusion capacity all within normal limits. (*Id.* at 319-21.) A chest CT scan also taken the same day showed stable granuloma[1] within the lingula, but no evidence of fibrosis or chronic interstitial lung disease. (*Id.* at 310.) Dr. Kelling referred Plaintiff to pulmonary rehabilitation, but there is no record that Plaintiff ever sought or received this treatment.

In September 2003, Plaintiff began complaining of difficulty sleeping at night and excessive daytime sleepiness. (*Id.* at 295.) He was diagnosed with sleep apnea, which was treated with a CPAP. (*Id.* at 296.) Plaintiff reported that with the CPAP, his sleeping at night and excessive daytime sleepiness improved. He also reported that he had no shortness of breath, cough or wheezing during either the day or night. (*Id.*) On January 20, 2004, Dr. Kelling assessed Plaintiff with "Asthma, now Stage I." (*Id.*) Stage I asthma is characterized as "mild, intermittent," and is the mildest form of asthma. *Diagnosis and Management of Asthma*, University of California San Diego School of Medicine, Division of Medical Education, http://meded.ucsd.edu/isp/1998/asthma/html/naep.html.

---

[1] A granuloma is a small area of inflammation in tissue due to injury, such as from an infection. They typically cause no signs or symptoms and most do not require treatment. Edward Rosenow, M.D., *Granuloma: What Is It?*, http://www.mayoclinic.com/health/granuloma/AN00830.

On April 14, 2004, Plaintiff suffered a severe asthma attack after being exposed to cleaning products before playing a round of golf. Although the products caused him to wheeze, Plaintiff chose to continue with his golf, but after seven holes suffered a near-syncopal[2] episode with disorientation. (Tr. at 297.) However, when Dr. Kelling examined Plaintiff in his office later the same day, Plaintiff was feeling better and auscultation to his lungs was clear. (*Id.*) Nevertheless, Dr. Kelling admitted Plaintiff to the hospital. While Plaintiff was in the hospital, all examinations showed that Plaintiff's respiratory effort was normal and lungs were clear to auscultation.[3] (*See id.* at 347, 352, 355.) When Plaintiff returned to Dr. Kelling on May 3, 2004, he reported that he had no further syncopal episodes and no shortness of breath, wheezing or cough. (*Id.* at 297.) Plaintiff respiratory effort and exam were normal. (*Id.*)

Plaintiff went to the emergency room complaining of shortness of breath and disorientation in November 2004, but upon examination, his respiratory effort was even and unlabored, his respiratory pattern was regular and symmetrical and breath sounds were clear, and a chest x-ray showed no acute disease. (*Id.* at 200, 224.) Plaintiff received a nebulizer treatment and was released. There are no reports of further asthma attacks for seven months. In June 2005, Plaintiff stated he suffered an asthma attack after cutting the grass. (*Id.* at

---

[2] Syncope is a temporary loss of consciousness due to generalized cerebral ischemia (deficiency of blood supply); a faint or swoon. *Dorland's Illustrated Medical Dictionary* (27th ed. 1988).

[3] Plaintiff also reported to his physician at the hospital that he was in general fairly active and usually walks upwards of 18 holes of golf without limitation. (Tr. at 352.)

299.) When he went to the emergency room the following day, however, his work up was negative and he was sent home. (*Id.*) When he was seen by Dr. Kelling soon after, he had no further complaints of shortness of breath, cough or wheezing, and his respiratory exam was normal.[4] (*Id.*)

A pulmonary function report in September 2005 showed spirometry, lung volumes and diffusion capacity again within normal limits. (*Id.* at 328.) Soon thereafter, Dr. Kelling completed an Occupational Pulmonary Evaluation for Plaintiff, in which he concluded that there was no current evidence of asbestosis or asbestos related pleural disease, and that although Plaintiff has a history of asthma, there is no evidence of any permanent impairment from his asthma or exposure to asbestosis. (*Id.* at 302-03.) Based on its review of the record, the Court concludes that the ALJ's finding that Dr. Kelling's opinion is inconsistent with his own records is supported by substantial evidence.

Plaintiff argues, however, that Dr. Kelling's opinion is consistent with the medical records from another of Plaintiff's treating physicians, Dr. Stephen D. Proctor. (Docket No. 9 at 4.) The Court disagrees. Dr. Proctor treated Plaintiff from March 1998 through March 1999. (*See* Tr. at 163-87.) In May 1998, Dr. Proctor diagnosed Plaintiff with mild asbestosis, mild pleural thickening and asthma. (*Id.* at 173.) However, Dr. Proctor

---

[4] Because Plaintiff again complained of memory loss and fatigue following his attack, he also had a neurological consultation with Dr. Christopher S. Connelly. (*See id.* at 407-08.) Plaintiff had an entirely normal neurological examination, and Dr. Connelly was unable to determine what was causing Plaintiff's symptoms.

-11-

concluded that under the American Medical Association Classification Scheme for Respiratory Impairment, Plaintiff's condition was Class I, or 0% impairment. (*Id.*) Even after the work incident in September 1998 that Plaintiff claims caused the exacerbation of his asthma, Dr. Proctors's diagnosis did not change, and the only restriction he placed upon Plaintiff was that it was medically unsafe for Plaintiff to wear a respirator and to work in confined or hot areas. (*Id.* at 178.)

Dr. Kelling's opinion is also inconsistent with the medical records from other of Plaintiff's treating physicians. Plaintiff was seen by Dr. Jill Ohar, an attending physician in pulmonary medicine, on September 26, 2006. (*Id.* at 441-42.) Dr. Ohar noted that pulmonary function tests completed in August were all normal, even though they were completed on a day described by Plaintiff as being a "bad day" when he did not feel well, and concluded that Plaintiff's asthma was only "questionable." (*Id.*)

Dr. Kelling's 2006 opinion is also inconsistent with Plaintiff's reported daily activities. Dr. Kelling opined that Plaintiff is unable to walk a single city block without rest and could stand for not more than five minutes. (*Id.* at 417-18.) Yet, Plaintiff is an avid golfer; in 2004 he reported playing nine to eighteen holes daily (*id.* at 403) and that he normally walked up to 18 holes without limitation. (*Id.* at 352.) In September 2006 he reported playing daily and that he sometimes walked rather than use a golf cart. (*Id.* at 441.) At the hearing on this matter in October 2006, he testified that he still played nine to twelve

-12-

holes two to three times a week, although, contrary to what he told his physician a month earlier, he stated that always had to use a cart. (*Id.* at 470.)

Plaintiff next argues that the ALJ's finding that Plaintiff's statements concerning the limiting effects of his symptoms are not entirely credible is not supported by substantial evidence. (Docket No. 9 at 10-13.) The Fourth Circuit has established a two-step process for evaluating a claimant's credibility with regards to his subjective complaints of pain and other symptoms in accordance with the Commissioner's regulations. *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996); 20 C.F.R. § 404.1529 (2008); *see also* Social Security Ruling 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* ("SSR 96-7p").

Under the *Craig* analysis, Plaintiff must first produce objective medical evidence of an impairment which could reasonably be expected to produce symptoms in the amount or degree he alleges. *Craig*, 76 F.3d at 594; 20 C.F.R. § 404.1529(b). At step two of the *Craig* analysis, the ALJ must evaluate the intensity, persistence and functionally limiting effects of Plaintiff's symptoms. The Regulations require the ALJ to consider the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; type, dosage, effectiveness and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; and daily activities. 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p.

In this case, the ALJ found that Plaintiff's medically determinable impairments could be reasonably expected to produce the alleged symptoms, but further found that his statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible and are inconsistent with the weight of the evidence. (*See* Tr. at 22.) On review, the Court finds that this finding is supported by substantial evidence. The objective medical evidence, discussed in detail by the ALJ as well as by this Court, does not support Plaintiff's allegations. Moreover, the ALJ relied not only on the lack of objective medical evidence to support Plaintiff's subjective complaints, but also on Plaintiff's activities of daily living, such as playing golf on a regular basis, completing school and obtaining a degree in drafting, vacuuming, doing laundry and yard work, socializing with friends, and attending church on a regular basis. (Tr. at 22-23.)

Plaintiff argues, however, that the ALJ "ignored the law that unless there is affirmative evidence showing that [Plaintiff] is malingering, the Commissioner's reasons for rejecting [Plaintiff's] testimony must be clear and convincing." (Docket No. 9 at 12)(citing *Lester v. Chater*, 81 F.3d 821 (9th Cir. 1995).) This is not the standard in the Fourth Circuit and indeed, Plaintiff has failed to cite to any Fourth Circuit case applying such a standard.[5] The Fourth Circuit has instead held that an ALJ need not accept subjective complaints of pain "to the extent they are inconsistent with the available evidence, including objective

---

[5] Plaintiff's citation reflects that *Lester v. Chater* is a Fourth Circuit case. It was in fact decided by the Ninth Circuit.

evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain [Plaintiff] alleges she suffers." *Craig*, 76 F.3d at 595; *see also Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994)(holding that the ALJ's consideration of the lack of objective evidence was not in error when the ALJ "cited many additional reasons . . . for finding [Plaintiff's] testimony not credible").

The Court further notes that, "[u]ltimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ's determination on this regard is entitled to a deferential standard of review.

> The ALJ's determination on the credibility of the plaintiff's testimony regarding pain will be upheld on appeal as long as there is some support in the record for the ALJ's position and it is not patently wrong, since the ALJ is in the best position to observe witnesses and assess their credibility.

*Lewis v. Barnhart*, 201 F. Supp. 2d 918, 935 (N.D. Ind. 2002)(citations omitted). Accordingly, the Court finds that the ALJ's determination that Plaintiff's subjective complaints are not fully credible is supported by substantial evidence.

Plaintiff's next argues that the ALJ failed to give adequate consideration to Plaintiff's complaints and symptoms of anxiety in assessing his residual functional capacity. (Docket No. 9 at 13-15.) Specifically, Plaintiff argues that there is not substantial evidence to support the ALJ's finding that Plaintiff can perform the "substantial standing" required to perform light work on a full-time basis. Plaintiff contends that the effects of attention deficit disorder, anxiety, panic attacks and his respiratory impairments preclude him from working

-15-

on a sustained basis. (*Id.* at 14-15.) Plaintiff points to both the opinion of Dr. Kelling as well as his own testimony concerning the severity of his limitations in support of his argument. (*Id.*) This Court has found, however, that the ALJ properly discounted Dr. Kelling's opinion and found that Plaintiff's testimony concerning the severity of his limitations is not entirely credible. Moreover, the ALJ specifically considered the evidence concerning Plaintiff's allegations of mental impairments, and concluded that Plaintiff's mild mental conditions limit him to performing only simple, routine, repetitive tasks in a low-stress environment. (Tr. at 23.) Based on the record as a whole, there is substantial evidence supporting the ALJ's assessment of Plaintiff's residual functional capacity, and particularly, limitations resulting from his mental impairments.

Finally, Plaintiff argues that the ALJ erred by failing to include all of the limitations arising from Plaintiff's impairments, including the need to lay down for several hours several times a week after severe asthma attacks and the likelihood that Plaintiff would be absent from work more than four times a month, in his hypothetical question to the vocational expert ("VE"). (Docket No. 9 at 7-10.) A VE's testimony is relevant or helpful only when it is based upon a consideration of all other evidence in the record, and in response to hypothetical questions that fairly set forth all of a claimant's limitations. *Walker*, 889 F.2d at 50-51. Here, the hypothetical questions posed to the VE included all of the limitations found by the ALJ in his determination of Plaintiff's residual functional capacity. As is discussed above, the ALJ adequately evaluated Plaintiff's allegations regarding his

-16-

limitations and symptoms, and the ALJ's decision reflects that he considered these impairments in assessing Plaintiff's residual functional capacity. Accordingly, the hypothetical questions to the VE adequately described Plaintiff's impairments. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 8) be denied, that the Commissioner's motion for judgment on the pleadings (Docket No. 10) be granted, and that judgment be entered in favor of the Commissioner.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: April 2, 2009